In the Matter of ROBERT McCLEAN, Petitioner, against DEPARTMENT OF HEALTH OF THE CITY OF NEW YORK, Respondent.

Supreme Court, Kings County, February 20, 1951.

*Charles R. Lewis* for petitioner.

*John P. McGrath, Corporation Counsel (Elias Low* of counsel), for respondent.

GEORGE E. BROWER, Official Referee. Upon the return of an order to show cause directed to the department of health of the city of New York, the issues involved were referred to me to hear and determine and to make an appropriate order herein.

At the hearings held February 6 and February 20, 1951, and from the petition it would appear that one Robert McClean is the owner of an American bull terrier, male, which he raised from a pup; it is two years old and named Prince.

That on December 23, 1950, the dog strayed from his master's home and upon the same day was picked up by one Morris Bass who kept and harbored the dog until on or about January 3, 1951, when he, under the name of Brown, delivered the dog to the American Society for the Prevention of Cruelty to Animals.

Following December 23, 1950, McClean made a thorough search for the dog and shortly prior to January 10th he learned that the dog was in the possession of the A. S. P. C. A. He thereupon made a demand upon the department of health and the A. S. P. C. A. for the return of the dog, or in the alternate, to make provision for the care and isolation of the dog, pursuant to the Sanitary Code; both requests were denied and he was informed that the board of health had ordered the execution of the dog.

The department of health, by the corporation counsel of the City of New York, appears and answers basing its defense on the provisions of subdivision 2 of section 10 of the Sanitary Code of the City of New York, which reads: " Any dog or other animal which has been designated vicious by the Department of Health, as determined by veterinary examination, shall be surrendered to the Department of Health by the person owning or having possession thereof and shall be destroyed by the Department of Health."

The allegations in the answer and testimony adduced are, in substance, that the dog was brought to the A. S. P. C. A. by one other than the owner, who requested the destruction of the dog because it was vicious. No proof that such a request had been made upon the society was given, and the person so delivering the dog, when called as witness, denied that he made such a request.

The answer further alleges, in substance, that on the 4th day of January, 1951, one John Malone, a kennel man connected with the A. S. P. C. A. was required to move the dog to a larger kennel and without warning the dog attacked Thomas Murphy, who was assisting Malone, and then attacked Malone, bit, mauled and lacerated him, and would have maimed Malone had he not been rescued by other kennel men, that Malone required medical treatment for his wounds and was taken to and medically attended and treated at the Holy Family Hospital.

Malone and Murphy testified that the bites, mauling and lacerations were merely scratches and that he, Malone, went to the hospital for the treatment of a finger which had become injured in a fall while handling the dog and not for any injury which the dog inflicted upon him. Murphy testified that the injuries he received were merely scratches. Upon an adjourned hearing Malone testified that since the first hearing he had fed and observed the dog and now found him not vicious but gentle and good-tempered.

The answer further alleges that Mervin Rhoades and Samuel Hutt, both veterinarians, had determined the dog vicious; both Rhoades and Hutt made written reports to the department of health, in which they determined the dog vicious. The written reports, both primary and final, submitted by veterinarian Rhoades state under the heading " Remarks: (To Include Information Re: To Person Bitten, Etc.) P. B. John Malone — 46. A. S. P. C. A., 221 Carlton Ave. Multiple Bites (left finger, Rt. arm, Groin — left thigh). N. B.. — 46. Brought to A. S. P. C. A. by Brown.''

The report of veterinarian Hutt is to the same effect. Both veterinarians have submitted affidavits, and so testify, that they made their reports on the history of the dog while at the shelter and tests they had made. That the history consists of the story told by Murphy and Malone, and that the tests consist of pushing a stick into the cage where the dog was confined, and that if the dog grabbed the stick, in their mind, it was evidence that the dog was vicious.

I cannot refrain from drawing upon my own experience with dogs and cannot subscribe to the test as in any manner showing that the dog is vicious.

The hearing was adjourned to February 20th, and in the meantime, at the request of the court, Rhoades and Victor Spevack, veterinarians, re-examined the dog and have testified, after re-examination, that in their opinion the dog is good natured, gentle and not vicious.

Rhoades reversed his former opinion, as reported to the board of health, only after listening to all the testimony in the case and upon his re-examination of the dog.

In *Matter of Browne* v. *Rice* (259 App. Div. 847) it was held: " that the petitioner was not entitled to an order permitting the review of the findings of the health commissioner upon which he bases his order for the destruction of the dog, as the commissioner's acts in this respect were not of a judicial character."

Shortly thereafter another proceeding involving the same question of law came before the Appellate Division, Second Department (*Fucelli* v. *Rice*, 260 App. Div. 935), in which the court, after citing *Matter of Brown* v. *Rice* (*supra*) did review the findings of the health commissioner and held: " If it be assumed that such judicial review be in order, the evidence before the respondent commissioner, in our opinion, warranted his action in directing the destruction of the dog."

It is my opinion that the information furnished the veterinarians, and upon which their conclusions and reports were made, was a grossly misleading and distorted description of a happening, and that any order of the department based on reports so made should be restrained.

Some forty or fifty neighbors and friends of Prince appeared in court and were prevented with some little difficulty from hissing and booing when unfavorable testimony was produced.

The dog's owner, members of his family, some boys and a girl, and two adults testified as character witnesses. All with enthusiasm testified of their affection for Prince, that they had found him a kind, gentle and playful animal, not vicious or ill-tempered. So it would appear that in spite of all the distraction of the present-day living, with the movies, radio, television and many gadgets, the dog has not been forgotten, but remains man's best friend.

An order may be entered permanently restraining the department of health of the city of New York (insofar as the facts here presented are involved) from destroying the dog Prince, together with an order directing the A. S. P. C. A. to return said dog to petitioner.